## "ITALIA" SOCIETA ANONIMA DI NAVIGAZIONE v. DURNING, Collector of Customs.

### No. 100.

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1940.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for appellant.

John T. Cahill, U. S. Atty., of New York City (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment dismissing a complaint in an action to recover two fines paid to the defendant as penalties for importing two aliens in violation of § 145, Title 8 U.S.C.A. They were husband and wife, and the wife was admittedly excludable as an illiterate unless the husband was admissible, in which case she could have come in under § 136(o). Thus the propriety of both fines depended upon the inadmissibility of the husband and upon whether the plaintiff could have discovered it with reasonable care. He was an Italian laborer, 69 years old, ignorant of the language, coming to visit and live with his sister and her husband in Chicago, who were engaged in a grocery business which brought them an income of $3,000, and who owned other property, real and personal, worth—at their own appraisal—$10,000. On the aliens' arrival in New York the husband was examined and was certified as "afflicted with senility which may affect ability to earn a living." A board of special inquiry gave him a hearing at which he produced an Italian passport with the visa of the American consul at Naples—the port of his embarkation—bearing the initials of the

"Technical Adviser" at that place, and official of the Department of Labor employed to help the consul in deciding when to grant visas; but not bearing the initials of the examining medical officer at Naples, also an official of the Department. (At that time, March, 1935, the "Regulations Governing the Medical Examination of Aliens" of the Public Health Service provided, § 97, that if "applicants * * * have not passed the medical examination," initials or other symbols of the examining physician "shall not appear on the passport visa." If on the other hand the physician is satisfied, he must initial the visa.) Although the Board found the husband inadmissible because of the facts stated in the certificate, and because he was destitute—he and his wife had substantially no money—it gave him time to produce the affidavit of his sister and her husband, who jointly deposed that they would support him and his wife while they were in this country. Notwithstanding this, the Board voted to exclude them and the Board of Review affirmed their order upon appeal. Thereafter the sister and brother-in-law petitioned the Commissioner General to admit the aliens, adding that the husband's nephew and his wife had made the same "guarantee" as they to support them.

The aliens were then excluded and fines were imposed upon the plaintiff, the carrier which had transported them. These it paid under protest and then sued to recover on the two grounds; that the aliens should not have been excluded, and that even if they should, it was unfair to charge the plaintiff with the duty of foreseeing that they would be, in view of the issuance of the visa by the consul with the approval of the "Technical Adviser." The plaintiff's only challenge to the lawfulness of the exclusion is that the medical certificate at New York was signed by only one physician, although § 152 of Title 8 U.S.C.A., requires all aliens to be examined by two. It did not appear, however, that only one physician had in fact examined the husband, nor did that follow from the fact that the certificate bore only one name; it is to be assumed that the law was observed in this as in other cases. Indeed, there is no doubt that, unless the Secretary chose to accept the "guarantors," the alien was inadmissible anyway as a person likely to become a public charge; and whether the Secretary accepted the "guarantors" lay wholly within his discretion. § 158, Title 8 U.S.C.A.

■ Nor was it unfair to impose the fines, for the absence of the initials of the medical officer at Naples showed.that the alien had not "successfully passed the medical examination." The plaintiff answers that even so he might have been admissible, because, although defective in mind or body, he might still have been able to support himself, and that it was the duty of the consul and the "Technical Adviser," not of the physician, to decide how far the defect would disable him. That was quite true, but it was also true, as the plaintiff knew, that at New York he must pass another examination by physicians, and that it was their judgment as to his ability to earn a living which would control. § 136 (d), Title 8 U.S.C.A. Being advised that he had been found mentally·or physically defective, the carrier certainly assumed the risk that these ·officials might decide that he was unable to support himself, and that the Secretary might not be satisfied with his sponsors. Indeed, it is difficult to take the plaintiff's argument seriously. A laborer of 69 years, ignorant of the language, accompanied by a wife older than he, was certain to be unable to support himself and her in the United States; on what theory the carrier could discharge itself of liability for importing him in case he did not satisfy the Secretary that others would look out for him, we cannot comprehend, even if to his other disabilities senility had not been added. If a carrier can assume such chances and escape, the statute will be without sanction.

It is true that in Lloyd Sabaudo v. Elting, 85 F.2d 1015, we decided that a carrier might recover a fine imposed for importing an alien upon a visa initialed by the consul and the "Technical Adviser," though not by the medical examiner at the port of embarkation. However, the alien in that case had embarked in January, 1930, and there was nothing to show that the regulation which required the medical examiner to initial the visa had been promulgated before the following August when it bears date. The carrier relied upon this in its brief (p. 13) and the collector did not challenge its statements in his reply; although we wrote no opinion and indeed affirmed the judgment from the bench, this may well have been our reason, and it is therefore not necessary to overrule that decision in order to affirm this judgment.

Judgment affirmed.