**GIBSON v. REYNOLDS et al.**

No. 13767.

United States Court of Appeals
Eighth Circuit.

Jan. 11, 1949.

Hayden C. Covington, of Brooklyn, N. Y., and William E. Wiggins, of Texarkana, Tex., for appellant.

R. S. Wilson, U. S. Atty. and David R. Boatright and Charles A. Beasley, Jr., Asst. U. S. Attys. both of Fort Smith, Ark., and H. G. Morison, Asst. Atty. Gen., and Marvin C. Taylor, Sp. Atty., and Howard C. Wood, Atty., Dept. of Justice, both of Washington, D. C., for appellees.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This appeal is from an order and judgment of the District Court, dismissing appellant's complaint against the members of a local Draft Board, the Selective Service Appeal Board, the State Director of Selective Service for Arkansas and his Assistant, the Chief of the Legal Division for the Arkansas State Director, seeking damages for alleged improper classification of appellant under the Selective Training and Service Act of 1940, as amended, 50 U. S.C.A. Appendix, § 301 et seq. The complaint was dismissed on motion on the ground that appellees in classifying appellant were acting within the scope of their authority and duty imposed and conferred upon them by the Selective Training and Service Act and were not subject to a civil action for damages on account of such acts. D.C., 77 F.Supp. 629.

Appellant is a Jehovah Witness. He registered June 30, 1942, with his Local Board at El Dorado, Arkansas. On October 12, 1942, he filed his questionnaire reciting facts which he then claimed and now claims entitled him to a IV-D classification as a minister of religion entirely exempt from any service under the Act. The Local Board denied his claim for that classification and on November 6, 1942, classified him in Class I-A, which called for training and service in the armed forces. He appealed that classification to the Selective Service Appeal Board, which Board, on May 8, 1943, reversed the Class I-A Classification and placed him in Class IV-E, making him liable for service in a civilian public service camp as a conscientious objector. Appellant then requested the Selective Service State Director to appeal the latter classification to the President and to stay the induction process. The State Director and his Chief Legal Advisor declined to do so. On September 1, 1943, he was ordered to appear September 22, 1943, for a pre-induction physical examination. In 1944 he was given another such examination and notified by his Local Board that he had been found physically fit and accepted for civilian service. May 23, 1944, he was assigned to perform work in a civilian public service camp.

On August 8, 1944; he was ordered to report on August 21, 1944, to the Local Board at Carlinville, Illinois, for transportation to the Civilian Public Service Camp at Hill City, South Dakota. He reported to that Board and received transportation to the Camp. He proceeded to the Camp and arriving there declared that he came not to work but only to "complete his administrative processes incident to induction" and then to depart. He completed those processes, declared that he was a minister and had been improperly classified, obtained a written statement from the camp director that he had reported on August 23, 1944, completed the administrative process and, without performing any work, had left the camp voluntarily. Upon receiving that statement from the camp director he left the camp. As will be observed from an examination of the opinion of the Supreme Court in Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331, this course of action appears to have been deliberately planned for the purpose of determining at just what point in the administrative process of induction opportunity for challenging the propriety of his classification ceased and the availabiltiy of a judical review of the classification arose.

For his desertion from the Camp he was indicted by a Federal Grand Jury in South Dakota for violation of the Selective Training and Service Act. He was tried and convicted on February 13, 1945, in the District Court of South Dakota, and sentenced to imprisonment for five years. At that trial he unsuccessfully undertook to challenge the propriety of

his classification. He appealed his conviction to the Court of Appeals where it was affirmed. Gibson v. United States, 8 Cir., 149 F.2d 751. On certiorari the Supreme Court on December 23, 1946, reversed and remanded the cause (Gibson v. United States supra), holding that he should have been permitted to present and have the question of the propriety of his classification judicially determined in the criminal prosecution. Upon remand of the cause to the District Court, active hostilities having ceased, the indictment was dismissed and appellant discharged February 4, 1947. Thereafter on January 29, 1948, he filed the present action in the District Court for the Western District of Arkansas. In the Complaint it is charged that appellees, in passing on appellant's classification,

"* * * refused and failed to consider and be governed by the * * * proof that plaintiff submitted to them, showing that he was an ordained minister of religion within the meaning of Section 5 (d) of the Selective Training and Service Act and Section 622.44 of the Selective Service Regulations, and thereby

"(a) said defendants acted contrary to and in violation of Section 622.44 of the Selective Service Regulations promulgated by the President of the United States, concerning classification of regular and duly ordained ministers of religion;

"(b) said defendants ignored and disregarded and failed to consider or apply Opinion No. 14 and State Director Advice No. 213-B of Selective Service National Headquarters concerning Jehovah's Witnesses, under which plaintiff would have been declared to be a duly ordained minister of religion, or a regular minister of religion;

"(c) said defendants discriminated against plaintiff contrary to the due process clause of the Fifth Amendment to the United States Constitution; and

"(d) said defendants deprived plaintiff of his procedural rights of due process to a full and fair hearing by a fair and unprejudiced board contrary to the due process clause of the Fifth Amendment to the United States Constitution."

In a carefully considered memorandum opinion the trial court reviewed many of the authorities cited by the parties on this appeal (77 F.Supp. 629). The present opinion need not be extended by a repetitious analysis of those authorities. Nor is there need, in view of the conclusion we reach on the main question presented, to consider whether an action for malicious prosecution, as distinguished from an action under the Civil Rights Act, 8 U.S. C.A. § 47, may be maintained against these appellees under the circumstances of this case, or, whether an action under the Civil Rights Act is barred by the Arkansas Statute of Limitations. Pope's Digest, § 8938.

The determinative question is whether the acts complained of were committed by appellees as officers of the Government within the scope of their authority and jurisdiction and hence privileged. If they were privileged then there is no liability stated either for malicious prosecution or under the Civil Rights Act. The question assumes that the classification was wrong and that appellant was injured thereby. It also assumes that each of the appellees was responsible for the assumed injury. For the purposes of the consideration of the question stated, those assumptions will be indulged.

An examination of the many authorities on this question results, on first impression, in an apparent contradiction between two broad propositions of law. The principle of Anglo-American justice on the one hand that no person is above the law and all shall be held accountable in the courts for malicious violation of the lawful rights of another, albeit under color of office, and the more modern principle arising from the public interest and necessity to insure zealous and fearless administration of the law, that some officers of government must be and are afforded personal immunity from civil actions for damages for acts done in relation to matters committed to them by law although probable cause be absent and malice be present in their enforcement of the law.

Since the latter doctrine of immunity has not been extended to all officials

98

it is at once necessary to determine whether the officials designated by the Selective Training and Service Act to perform the duties assigned them under that Act shall be included in the class of governmental officials possessing the immunity heretofore stated. Eliminating from present consideration strictly judicial officers whose immunity springs from the nature of their duties peculiar alone to that limited group of officials, it is safe to say that all of the considerations which enter into the judicial holdings that the Postmaster General,[1] the Secretary and Assistant Secretary of the Treasury,[2] Members of the Securities and Exchange Commission,[3] the Comptroller of the Currency of the United States,[4] Members of the United States Parole Board,[5] the Warden of a Federal Penitentiary and the Director of the Bureau of Prisons,[6] officials of the Home Owners Loan Corporation,[7] the Commissioners of the District of Columbia, the Chairman of the Tariff Commission, a building inspector, the United States Commissioner of Indian Affairs, the Chief of Record and Pension, Office of the War Department,[8] and a deputy Fire Marshal,[9] possess the immunity in question, apply with equal force to officials such as these appellees. And, in addition to the considerations of public policy furnishing the motivating reasons for the courts to declare that those officers above referred to should possess this immunity, the members of the Local Draft Boards, the Boards of Appeal, the State Directors and their legal advisors must fairly, fearlessly, freely and conscientiously determine the personal destinies of a sector of the American people, probably greater in number than the combined number of all of those affected by the discharge of the official duties of all of the officers first above enumerated. There could hardly be any group of public officials whose independence of ac-

tion was more essential, whose freedom from threats, duress or compulsion of any kind was more necessary or more to be desired in the effectuation of the public policy of fairness and equality as enumerated in the Congressional declaration appearing in the Act. And the character of their duties as defined by Congress places them in the category of quasi-judicial officers rather than in a purely ministerial or executive position. We have no hesitancy in concluding that appellees fall within the class of government officials who should and do possess the immunity afforded by the rule referred to.

But, first, what is that immunity? And how is the apparent conflict between the principle that no one shall be above the law and the other that certain public officials shall not be civilly liable for malicious improper administration of the duties of their offices reconciled? The answer is found in the qualification of the latter rule expressed in positive language in many of the decisions and by implication in the remainder, that the immunity only exists when the official is acting within the scope of his authority and duty in the performance of the duties imposed upon him by law, or, as is sometimes somewhat confusingly stated when applied to executive or administrative officers, when the officer is acting within his "jurisdiction."

■ The law does not contemplate the administration of official duty for the purpose of the attainment of the officer's personal ends or to satisfy his selfish personal motives of spite, ill-will, revenge, greed or avarice. When an officer performs an act under color of his office with such motives as the actuating cause or clearly without any right to act, he is not acting within the scope of his authority and the cloak of his office furnishes him no protection from civil actions for an injury

---

[1] Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780.

[2] Standard Nut Margarine Co. of Florida v. Mellon, 63 App.D.C. 339, 72 F.2d 557.

[3] Jones v. Kennedy et al., 73 App.D.C. 292, 121 F.2d 40.

[4] Cooper v. O'Connor, 69 App.D.C. 100,

99 F.2d 135, 118 A.L.R. 1440.

[5] Lang v. Wood et al., 67 App.D.C. 287, 92 F.2d 211.

[6] Lang v. Wood, supra.

[7] Adams v. Home Owners' Loan Corporation, 8 Cir., 107 F.2d 139.

[8] Cooper v. O'Connor, supra.

[9] Phelps v. Dawson et al., 8 Cir., 97 F.2d 339, 116 A.L.R. 1343.

perpetrated. Hence, the question here is, as it is in all cases where this doctrine of immunity is advanced, were these officials acting within the scope of their authority in the performance of the duties of their respective offices? The answer to that question lies in the application of the rule to the facts appearing in the complaint. Appellant says that he informed the Draft Board in his questionnaire [10] that he had attended a full two years at a Divinity School, studying for the Ministry, and that he still attended. Yet in the next sentence, he stated that in his present job the work he was doing was preaching. He said that he had been a minister of Jehovah's witnesses since June 1938 and that he was formally ordained September 9, 1938. And again in the next sentence he says that he is a student *preparing* for the ministry in the Watchtower Bible and Tract Society in Brooklyn, New York. He stated that he had also worked as a farm laborer and farmer, other than his "present job" during the preceding five years without stating the proportion of time devoted to each during that period. [11] Although he later stated in his complaint that he submitted proof "that he was devoting more hours to actual preaching and teaching the gospel of Jesus Christ in the manner required by Jehovah's witnesses than are devoted by the ordinary clergymen of orthodox religions" and that at the time he was classified in IV-E by the Appeal Board and his request for an appeal to the President was denied he was devoting full time to his "preaching activity" as a pioneer missionary evangelistic minister of Jehovah's witnesses, yet he did not state how much time he had been devoting to his preaching activity or how long prior to the time he was classified IV-E he had been devoting all of his time to preaching. Appellant then alleged that there was no evidence which disputed his claim that he was a minister and that therefore appellees "did not have authority or jurisdiction under the statute to order him to report for service under the Act" and that appellees "had no discretion or authority under the law to reject his claim" that he was a minister. He alleged further that the proof *he filed* concerning his status showed that appellees had no evidence to support their findings and classifications, that they acted arbitrarily and capriciously, grossly and clearly abused their discretion, illegally misused their powers, disregarded the proof he submitted, acted unwarrantedly, made their findings without basis in substantive evidence contrary to the undisputed evidence, were prejudiced against him and discriminated against him because of his creed and faith, and otherwise departed from the applicable rules of procedural law and administrative regulations.

We do not scrutinize with meticulous nicety the allegations of a complaint when appraising its sufficiency on motion to dismiss. The contrary is the established rule. Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, and cases there cited. But when a litigant contends that the factual allegations of his complaint demonstrate that a group of public officers, presumed to have done their duty, were guilty

---

[10] " * * * I have completed 8 years of elementary school and 1 year of high school. I have had the following schooling other than elementary and high school: Divinity school; course of study, Ministry; have attend a full two years and still attend. The job I am now working at is minister of religion. I do the following kind of work in my present job: Preaching the Kingdom of God for which Jesus taught his followers to pray (Matthew 6:10). I have also worked at the following occupations other than my present job, during the past 5 years: Farm laborer, farming from 1934 to 1940. My usual occupation, or the occupation for which I am best fitted, is ministry work. I would not consider accepting a job which would require me to move away from my present home. I am a minister of religion. I do customarily serve as a minister. I have been a minister of Jehovah's Witnesses since June, 1938. I have been formally ordained. My ordination was performed on September 9, 1938, by Brother Miller at Birmingham, Alabama. I am a student preparing for the ministry in a theological or divinity school. I am attending the Watchtower Bible and Tract Society, which was established before September 16, 1939, and is located at 117 Adams Street, Brooklyn, New York."

[11] Cox v. United States, 332 U.S. 442, 68 S.Ct. 115.

of such wanton, spiteful, malicious prejudice that their acts, ostensibly done in the performance of their statutory duties, were therefore not acts done "in relation to or connected with"[12] those duties but were in fact vengeful acts committed for the purpose of personally injuring the litigant, the reviewing court must examine those factual allegations with meticulous care to determine whether such a case is stated. For, as frequently stated by the courts, it is easy for a disgruntled litigant to state his conclusion, and to even believe, that the officer responsible for the real or imagined injustice was guilty of the rankest kind of malice. It is not sufficient to avoid the rule of immunity that the facts demonstrate that a prosecutor or draft official is so imbued with enthusiasm in enforcing the law or in preventing evasions of the obligation of citizens to their government in time of war, that they are possessed of animosity or even malice toward one whom the officer may erroneously feel is seeking an immunity to which he is not entitled. For under those circumstances the officer continues to act in the performance of his official duties and his acts are within the scope of his duties and authority. It is when, excepting cases of unconstitutional statutes and the like, facts are made to appear which justify the conclusion that the officer was maliciously pursuing the litigant and not the attainment of the object of his statutory duty that he will be held to have been acting beyond the scope of the authority of his office and the immunity which would otherwise have existed ceases.

The Selective Training and Service Act sets forth the duties and responsibilities of appellees under that Act. We must take notice thereof. The allegations of the complaint indicate that appellees were following the directions given them by that Act. The facts stated in the complaint do not justify the inference that appellees' acts were committed for the purpose of maliciously injuring the appellant. The fact that approximately two years and four months elapsed between the date of his registration and the date he was ordered to report to the Public Service Camp is mute evidence to the contrary. If appellees' classification of appellant was wrong, the complaint does not state facts from which it may be inferred that appellees' acts were not committed in the discharge of their official duties or were not within the scope of their authority. The law presumes that they were. The appellees were not liable under the facts stated in a civil action for damages for those acts. The judgment of the trial court was correct and is affirmed.

---

[12] Cooper v. O'Connor, supra.