**PAPAGIANAKIS et al. v. The SAMOS et al.**

No. 6139.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 20, 1950.

Decided Dec. 20, 1950.

---

258

Burt M. Morewitz, Newport News, Va. (J. L. Morewitz and Morewitz & Morewitz, all of Newport News, Va., on brief), for appellants.

John P. Harper, Jr., Asst. U. S. Atty., and Hugh S. Meredith, Norfolk, Va. (Vandeventer & Black, Norfolk, Va., and George R. Humrickhouse, U. S. Atty., Richmond, Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a suit against immigration officials and against a vessel, her master and owners, asking damages on the ground of false imprisonment. The appellants, who were libelants in the court below, are two Greek seamen, Andreas Papagianakis and Zafiras Kymos, who arrived in the port of Norfolk on June 29, 1949, as members of the crew of the Greek vessel "Samos." On inspecting the crew of the vessel, Harold G. Lamoureaux, Immigration Inspector at Norfolk, issued an order that these seamen be detained on board the vessel, finding that they were not bona fide seamen. They were detained pursuant to the order, being locked up at night to prevent their escape from the vessel, until they were released in habeas corpus proceedings. The judge below ordered their release on the ground that the finding of the Immigration Inspector was not supported by substantial evidence and on appeal we affirmed this order. Regan v. Papagianakis et al., 4 Cir., 180 F.2d 888.

An intervening libel, filed by appellants in a proceeding pending in the lower court against the vessel, sought to implead the immigration officials and recover damages against them and against the vessel, her master and owners, on account of the detention from which appellants had been released in the habeas corpus proceedings.[1] The immigration officials filed exceptions to the libel and it was dismissed as to them on the ground that their actions

1. The pertinent allegations of the intervening libel are as follows:
"That upon the return of said vessel to Hampton Roads, Virginia, the afore-said Master contrived to have said intervening libelants detained on board by instigating the aforesaid Harold G. Lamoureaux, acting under the directions of the

"were in performance of their duties as immigration officials, for which they are not suable or liable". A hearing was had as to the liability of the vessel, her master and owners, and they were absolved of liability on the ground that there had been no false imprisonment of appellants, that neither the master nor any of the other respondents had endeavored to keep appellants on board the vessel by instigating action on the part of the immigration officials and that, in detaining appellants aboard the vessel, they had acted in good faith and without malice or improper motive pursuant to an order of the immigration authorities valid on its face. The appeal before us challenges the correctness of the order dismissing the immigration officials from the case on the exceptions to the libel and the correctness of the finding exonerating the other respondents of liability for the detention of appellants aboard the vessel.

On the question as to the correctness of the order discharging the immigration officials from the suit, there can be no question but that, even though the detention order of the immigration inspector was not supported by substantial evidence, he was acting in the line of official duty in issuing it. It is provided by statute that a vessel arriving at a port of the United States shall detain alien seamen aboard until they shall have been inspected by an immigration officer at the port and shall deport them if required by the immigration officer to do so. 8 U.S.C.A. § 167. Alien seamen seeking to enter a port solely in pursuit of their calling as seamen are exempted from requirements relating to immigrants, 8 U.S.C.A. § 203(5); and they are allowed to land for the purpose of reshipping under such regulations as the Attorney General may prescribe. 8 U.S.C.A. § 168. These regulations prescribe that, where the immigration officer is not satisfied that an alien applying for temporary admission is a bona fide alien seaman, he shall order that he be detained aboard the vessel and be deported. Section 120.21(e) of 8 C.F.R. is as follows: "Where the immigration officer is not satisfied that an alien applying for temporary admission as a bona fide alien seaman is entitled thereto, the immigration officer shall order the owner, charterer, agent, consignee, or master of the vessel on which such seaman arrived to detain him on board and deport him in the manner provided by law."

■ It is perfectly clear, therefore, that, in inspecting the crew of the "Samos" and issuing the order that appellants be detained aboard the vessel, the immigration inspector was engaged in the performance of a duty imposed by statute and one which involved the exercise of discretion and the performance of a function of a quasi judicial character. It is true that the statute, 8 U.S.C.A. § 167(a), imposes the duty upon the "immigration officer in charge"; but the order was issued "by direction of the immigration and naturalization officer in charge", and we think there can be no question but that such authority may be validly delegated by the immigration officer in charge to the immigration inspectors working under him. In a busy port such delegation is essential to the proper transaction of business.

aforesaid Daniel Regan and the aforesaid Albert Del Guercio, to issue an order purported to direct the detention of said intervening libelants on board the Steamship 'Samos', as mala fide seaman, and incarcerating said intervening libelants in a locked room thereon and under guard. Said false imprisonment has been and still is being imposed on said intervening libelants by all of the respondents herein, in violation of their civil rights, and especially their respective rights to shore leave, as well as to land in the United States for the purpose of reshipping as bona fide seamen, and in the very teeth of the International Convention for Safety at Sea, Reservation 1, which prohibits the taking of such seamen to sea against their will or consent, said intervening libelants being desirous of so landing for such purposes, as aforesaid, as was accomplished by the original (4) libelants herein, and expressly being unwilling to be forced to sail on the aforesaid vessel, in violation of their aforesaid rights to invoke their standing as bona fide seamen. To the loss and damage of each of the intervening libelants, in the respective sum of $10,000.00, each."

Lloyd Royal Belge Societe Anonyme **v.** Elting, 2 Cir., 61 F.2d 745, 747; The City of Harvard, D.C., 52 F.2d 461.

■ The question presented is whether an officer in the executive department of the government may be held liable in a suit for damages because of acts done in the discharge of official duty involving the exercise of discretion of a quasi judicial character. We think that this question must be answered in the negative, as it was answered by the court below. It has long been settled that judicial officers may not be held liable in damages for acts performed in the discharge of their duties. Randall v. Brigham, 7 Wall. 523, 535, 19 L.Ed. 285; Bradley v. Fisher, 13 Wall. 335, 350–351, 20 L.Ed. 646. Some of the older decisions drew a distinction between judicial officers and executive officers exercising quasi judicial functions, holding as to the latter that there was not absolute immunity but immunity only so long as they were not actuated by malice or other sinister motive. See Wilkes v. Dinsman, 7 How., 89, 130–131, 12 L.Ed. 618; Gould v. Hammond, 10 Fed.Cas. page 874, No. 5,638; Bailey v. Berkey, C.C., 81 F. 737 and cases there cited. See also Gibson v. Reynolds, 8 Cir., 172 F.2d 95. This distinction was repudiated, at least so far as heads of executive departments are concerned, in Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 637, 40 L.Ed. 780, where the court used language which in logical application would require that the rule of absolute immunity be applied to all officers of the government when exercising discretionary power in the line of official duty. The court said: "We are of opinion that the same general considerations of public policy and convenience which demand for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of the performance of their judicial functions apply, to a large extent, to official communications made by heads of executive departments when engaged in the discharge of duties imposed upon them by law. The interests of the people require that due protection be accorded to them in respect of their official acts. * * *

In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as intrusted to the executive branch of the government, if he were subjected to any such restraint. He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested. But if he acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals."

As noted above, the argument upon which the Supreme Court bases its decision in Spalding v. Vilas, supra, applies in principle in the case of other executive officers as well as heads of departments; and it was so applied in the case of a special assistant to the Attorney General in Yaselli v. Goff, 2 Cir., 12 F.2d 396, 403, 56 A.L.R. 1239, affirmed per curiam 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395. In this case Judge Rogers, speaking for the Court of Appeals of the Second Circuit, said: "A public office is an agency for the state, the duties of which involve in their performance the exercise of some portion of the sovereign power, either great or small. The rule of responsibility of a public officer, as held by the courts, is said to be that, if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an erroneous performance, is regarded as an injury to the public, and not as one to the individual. It is to be redressed in some form of public prosecution, and not by a private person who conceives himself specially injured. Cooley on Torts (3d Ed.) vol. 2, p. 756. In Thibodaux v. Thibodaux, 46 La.Ann. 1528, 16 So. 450, it is said: 'Officials in the per-

formance of a duty imposed by law cannot be held in damages for acts done strictly within the lines of official duty.' "

In Cooper v. O'Connor, 69 App.D.C. 108, 99 F.2d 135, 141, 118 A.L.R. 1440, Judge Miller, speaking for the Court of Appeals of the District of Columbia, traced the development of the doctrine of immunity of public officers for acts performed in the discharge of official duties and applied it in the case of minor executive officers who were not exercising even quasi judicial functions, saying:

"The rule as now declared in many cases has been applied, not only to officials judicial and quasi-judicial, but to executive officers generally, such as the Postmaster General, the Secretary and Assistant Secretary of the Treasury, Members of the United States Parole Board, the Parole Executive, the Warden of a Federal penitentiary, the Director of the Bureau of Prisons, the Commissioners of the District of Columbia, the Chairman of the Tariff Commission, a building inspector, the United States Commissioner of Indian Affairs, and the Chief of Record and Pension Office of the War Department.

"The reason now given for the rule is simply one of public policy. 'Otherwise the perfect freedom which ought to exist in discharge of public duty might be seriously restrained, and often to the detriment of the public service.' De Arnaud v. Ainsworth, 24 App.D.C. 167, 178, 5 L.R.A.,N.S., 163. See also, United States to Use of Parravicino v. Brunswick, 63 App. D.C. 65, 68, 69 F.2d 383, 386. As was pertinently said in an English case: '* * * Does an action lie against a man for maliciously doing his duty? I am of opinion that it does not; * * *'. Dawkins v. Paulet, L.R. 5 Q.B. 94, 114."

In Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581, the doctrine was applied to grant immunity from suit to a District Director of Immigration and a District Director of an Enemy Alien Control Unit as well as to the Attorney General in a suit in which plaintiff alleged malicious arrest and imprisonment and violation of the provisions of the Civil Rights Act.[2] Judge Learned Hand, speaking for the court in that case, lays down the basis for the extension of the doctrine so clearly that nothing further need be said. Said he:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cov-

er occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him."

See also 43 Am.Jur. pp. 86–89; 22 Am. Jur. p. 397; Dreucker v. Solomon, 21 Wis. 621, 94 Am.Dec. 571; Turpen v. Booth, 56 Cal. 65, 38 Am.Rep. 48; note 137 Am. St.Rep. p. 50 et seq.

■ On the basis of the foregoing authorities, it is perfectly clear that, since the immigration officials were acting in line of duty and were engaged in a discretionary, quasi judicial function in the issuance of the detention order, they may not be held liable therefor in damages, whatever motive may be alleged for issuing same. We think, also, that even under the rule laid down by some of the older cases, i.e. that the officer would be liable if actuated by malice or other sinister motive, they were properly dismissed from the case, since there is no allegation that they were actuated by malice or any improper motive in issuing the order. See Gibson v. Reynolds, 8 Cir., 172 F.2d 95.

■ Nor do we think that the suit can be maintained against the immigration officials because the libel alleges violation of the Civil Rights Act. This was sufficiently dealt with by Judge Hand in Gregoire v. Biddle, supra. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, upon which appellant relies, relates to criminal liability, not liability for damages. In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, also relied on by appellants, the only matter decided was that the District Court had jurisdiction of the cause of action on the ground that a federal question was raised in the complaint.

■ On the question as to the liability of the vessel, her master and owners, little need be said. Appellants were detained by them on board the vessel; but this was justified by the order of the Immigration Inspector. The Edit H., 4 Cir., 119 F.2d 4. Appellants contend that the order was void because not signed by the Immigration Officer in charge at the port; but, as stated above, this was authority properly delegated by him to the Immigration Inspector. It is argued also that, because of the provisions of 8 U.S.C.A. § 152 the order was void unless signed by two inspectors; but there is nothing in that statute requiring that a detention order be signed by two inspectors, and the officers of the vessel may not be charged with liability for obeying such order, since they had a right to presume that the provisions of the law had been observed. "Italia" Societa Anonima Di Navigazione v. Durning, 2 Cir., 115 F.2d 711; Ngim Ah Oy v. Haff, 9 Cir., 112 F.2d 607. It is argued that the detention order was void because of the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.; but whatever might be required as to an order of deportation, certainly the officers of the vessel would not have been justified in ignoring that part of the order which required that they keep the petitioners on board. Complaint is made because appellants were locked in their staterooms at night, after the order had been served, to prevent their leaving the vessel; but this was clearly justified as the vessel would have incurred a heavy penalty if they had been permitted to escape. The Santos Maru, 5 Cir., 84 F.2d 482, 483.

■ There is nothing in the record to support the charge that anyone connected with the vessel induced the immigration authorities to issue the detention order or that it was issued for any reason other than as found by the Immigration Inspector, viz., that petitioners were believed not to be bona fide seamen because, to quote the Inspector, "Both men signed on in France just prior to ship's sailing for the United States. Both requested to be paid off to join another ship. But did not name any ship that they had in mind. Neither man had ever paid off in the United States before. They

failed to establish the fact that they would maintain their status as seamen." The District Judge found that the respondents and the master acted in good faith and without malice or improper motive and that they did not endeavor to keep the appellants on board the vessel or instigate the immigration officers to do so and that they did not imprison appellants pursuant to any contrivance or conspiracy. There is nothing in the record which would justify us in disturbing these findings.

Appellants complain because default judgment was not granted them; but whether such judgment should have been entered or respondents allowed to answer was a matter resting in the sound discretion of the District Judge.

Affirmed.