Richard O. PAYNE, Jr., Plaintiff,

v.

Rear Admiral Logan McKEE, U.S.N., Commander of the Norfolk Naval Shipyard, Portsmouth, Virginia, Defendant.

Joseph A. MANNING, Plaintiff,

v.

Rear Admiral Logan N. McKEE, individually and as Commanding Officer of the Norfolk Naval Shipyard, Portsmouth, Virginia, Defendant.

Civ. A. Nos. 2243, 2248.

United States District Court

E. D. Virginia,
Norfolk Division.

July 9, 1957.

Jack K. Moulton, Alan S. Mirman, Frederick T. Stant, Jr., Philip L. Russo and Samuel I. White, Norfolk, Va., for Joseph A. Manning.

George H. Gray, Norfolk, Va., for Richard O. Payne, Jr.

John M. Hollis, Asst. U. S. Atty., Norfolk, Va., for defendant.

HOFFMAN, District Judge.

The similarity of the principles of law applicable to these two cases has prompted the filing of a joint opinion, although the matters have not been consolidated.

At the times hereinafter stated each of said plaintiffs was a civilian employee of the Norfolk Naval Shipyard. Payne remains so employed but Manning's services were terminated by action of the defendant in his official capacity as of February 11, 1955.

Payne is an honorably discharged veteran of World War I, and has been a federal employee since May 28, 1918. As of February 10, 1955, plaintiff was employed at the Shipyard with a classification of Supervisory Storekeeper (General) at grade GS–6, at a salary of $4,670 per annum, and with a permanent Civil Service status. On the last stated date defendant addressed a letter to Payne notifying him of proposed adverse action changing his rating from Supervisory Storekeeper to Supervisor Stockman, Step 3, at the same salary[1] of $4,670 per annum; said adverse action to be effective not earlier than March 14, 1955. Having been advised of his right to a hearing, Payne availed himself of this opportunity at which time he was represented by counsel. The hearing on March 3, 1955, resulted in an adverse decision to plaintiff, who promptly appealed to the United States Civil Service Commission where the decision was

1. Although the salary remained tentatively the same, it is conceded that the adverse action resulted in a reduction in rank and, ultimately, in compensation.

affirmed as to Payne's classification as a Supervisor Stockman, Step 3.

The advance notice of proposed adverse action was given in accordance with the provisions of § 14 of the Veterans' Preference Act of 1944, as amended, 5 U.S.C.A. § 863, which said Act reads in part as follows:

"No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, or in any establishment, agency, bureau, administration, project, or department, hereinbefore referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred from future appointment *except for such cause as will promote the efficiency of the service* and for reasons given in writing, and the person whose discharge, suspension for more than thirty days, furlough without pay, or reduction in rank or compensation is sought shall have at least thirty days' advance written notice * * *, stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision: *Provided,* That such preference eligible shall have the right to make a personal appearance, or an appearance through a designated representative, in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission; after investigation and consideration of the evidence submitted, the Civil Service Commission shall submit its findings and recommendations to the proper administrative officer and shall send copies of the same to the appellant or to his designated representative, and it shall be mandatory for such administrative officer to take such corrective action as the Commission finally recommends * * *."

There are no complaints as to the work performed by Payne. Apparently he has been a loyal employee of many years' standing. The gist of defendant's action relative to the proposed reduction in rank and compensation rests in the details as set forth in defendant's letter of February 10, 1955, as follows:

"In compliance with criteria issued by the Civil Service Commission, the Department of the Navy has issued instructions for the ungrading of certain types of storekeeping positions and established the rating of Supervisor Stockman as described in enclosure (1). After careful review of the duties and responsibilities of your present assignment, it has been determined that you are performing the work described for Supervisor Stockman. Accordingly, it is proposed to change your rating to Supervisor Stockman. It is believed that the establishment of the rating of Supervisor Stockman and the affixing thereto of appropriate rates of pay constitutes an act to promote the efficiency of the service."

As to Joseph A. Manning the factual situation is somewhat different. He is an honorably discharged veteran of World War II and became a civilian federal employee on October 10, 1950. During the latter part of August, 1954, Manning verbally reported to defendant certain irregularities known to plaintiff involving alleged misappropriation of funds and thefts of government property occurring at the Shipyard. When requested by defendant to put such statements in writing, plaintiff complied by

letter dated September 7, 1954, which letter was marked "confidential" and was intended only for official use.

Defendant appointed a Board of Naval Officers to act for defendant in investigating the irregularities reported by plaintiff, one of its members being an officer previously assigned to assist plaintiff in the preparation of the letter of September 7. At a session of the Board held on September 14, plaintiff was called to testify and, according to Manning, this was in violation of his constitutional rights. It is further contended that the actions of the Board were such as to hinder plaintiff from freely testifying with regard to the alleged irregularities.

Manning insists that, shortly after the irregularities were reported to defendant, he was subjected to embarrassment, humiliation, harassment and abuse by his supervisors and superiors. He urges that a conspiracy existed and that, within a period of 33 days, he was cited for infractions of regulations and given delinquency reports on four different occasions. These acts, plaintiff alleges, were with knowledge of defendant.

By letter dated December 7, 1954, Manning was given thirty days' advance written notice of proposed adverse action to affect his removal on January 14, 1955. The basis of Manning's removal was stated to be "as promoting the efficiency of the service". Without detailing the specifications as set forth in the letter, it is sufficient to state that a transcript of the testimony of all witnesses appearing before the Board of Investigation on September 14, 1954, was attached, same covering 187 pages; twenty-seven irregularities were reported by Manning and eleven of the items were determined by the Board to be unfounded and defamatory as to other employees; that information as to alleged irregularities occurring as early as February, 1952, was withheld by Manning until the latter part of August, 1954, when plaintiff was given a warning for apparent abuse of sick leave privileges, and that such withholding was intentional until the use

thereof tended to serve Manning's own end; and that plaintiff failed to carry out instructions and otherwise was cited for disciplinary action on four occasions.

A hearing on the proposed adverse action was conducted on December 14, 1954, by a Board appointed by defendant. Plaintiff contends that the Board failed to allow him sufficient time to prepare a reply to the charges, although he does not allege that more time was requested and the advance notice letter afforded him ample opportunity to respond. Manning further insists that his witnesses were threatened and intimidated by their superiors and encouraged not to testify or give affidavits in peril of losing their jobs, all of which was allegedly known by defendant and constituted a claimed violation of Manning's rights under the Constitution.

A verbatim record of the hearing held on December 14 was attached to a letter written by defendant on February 3, 1955, at which time Manning was advised that the charges specified in defendant's letter of December 7 were found sufficient and the removal of plaintiff was ordered effective February 11, 1955. Manning appealed to the Civil Service Commission where the defendant's action was affirmed. Later, plaintiff requested reinstatement to his former position which was denied for the reason that he had previously been removed for cause.

The relief sought in each case, while stated in different phraseology, is essentially one by way of declaratory judgment to adjudge the defendant's actions as in violation of the Veterans' Preference Act of 1944, as amended, 5 U.S.C.A. § 851 et seq., the Civil Service Act, as amended, 5 U.S.C.A. § 631 et seq., and the Classification Act of 1949, as amended, 5 U.S.C.A. § 1071 et seq. Each complaint requests the entry of an order directing defendant to restore plaintiffs to their former positions with restoration of pay. In Manning, the Court is further requested to enjoin and restrain defendant from refusing to restore plaintiff to his former position, and this

plaintiff demands compensatory and punitive damages in the aggregate sum of $75,000.

Defendant has filed motions to dismiss alleging:

1. Lack of jurisdiction because the Secretary of the Navy and the individual members of the Civil Service Commission are not made parties to the proceeding although they are indispensable;

2. There is no authority in this type of action for this Court to issue a writ of mandamus, as such right exists only in the United States District Court for the District of Columbia;

3. The amount in controversy does not exceed the sum or value of $3,000;

4. As to Manning, the Court is without jurisdiction to grant the claim for lost wages, and

(a) Damages are not recoverable because the acts complained of were performed in defendant's official capacity and within the scope of his employment as Commander of the Shipyard, and

(b) The action is not maintainable under the Civil Rights statutes as there is no allegation that plaintiff was deprived of any constitutional right by or under state action or authority, and, additionally, did not accrue within one year before the commencement of this action, and

(c) The action is not maintainable under the Federal Tort Claims Act as said Act provides only for suits against the United States of America and not against employees thereof.

■ Counsel concede that plaintiffs are not entitled to an order restoring them to their former positions, as such action is in the nature of mandamus which the District Court, other than the District of Columbia, does not have jurisdiction to grant. An effort to enjoin the defendant from refusing to restore a civilian employee to his former position accomplishes the same purpose. In the absence of special statutory authority, this Court may issue a writ of mandamus only in aid of its own jurisdiction, where

such jurisdiction has already been acquired on other grounds. Rule 81(b) of the Federal Rules of Civil Procedure, 28 U.S.C.; Insular Police Commission v. Lopez, 1 Cir., 160 F.2d 673; Petrowski v. Nutt, 9 Cir., 161 F.2d 938; Branham v. Langley, 4 Cir., 139 F.2d 115; 28 U.S.C. § 1651. Counsel for Manning have similarly abandoned their claim for loss of wages in their brief filed herein.

In each case plaintiffs, as employees of the Department of the Navy, had a right to appeal defendant's decision to the Secretary of the Navy through the grievance procedure. Such an appeal does not lie, however, where the veteran preference employee elects to appeal to the Civil Service Commission as was the situation in each of the instant cases. The essential question before the Court is substantially as follows:

■ Where an adverse decision from one obviously acting in behalf of the Department of the Navy is appealed to the Civil Service Commission, may a judicial review of *agency* action be had without joining as parties defendant the individual members of the Civil Service Commission, or, stated otherwise, is the immediate Commander of a Naval Shipyard the only essential party to such action where an administrative remedy has been pursued unsuccessfully to its conclusion through an agency designated by Congress?

Prior to Blackmar v. Guerre, 342 U.S. 312, 72 S.Ct. 410, 96 L.Ed. 534, there existed a sharp conflict of authority as to the jurisdiction of district courts in cases of this nature. The Administrative Procedure Act, 5 U.S.C.A. § 1009, provides for a review of agency action only in a court of "competent jurisdiction". The courts of the District of Columbia are now held to be the only courts of "competent jurisdiction" to reach the members of the Civil Service Commission. The decision of the United States Supreme Court in Blackmar on March 3, 1952, apparently puts the question at rest. There, the veteran was employed in the Regional Office of the

Veterans' Administration at New Orleans. Upon his removal from office, he appealed to the Tenth Regional Office of the United States Civil Service Commission at New Orleans, where the Regional Board found that his discharge was not warranted and recommended that he be reinstated. The Veterans' Administration appealed to the Board of Appeals and Review of the Civil Service Commission in Washington[2], where the decision of the Regional Board was reversed. Blackmar then instituted his action in the District Court for the Eastern District of Louisiana, naming as defendants Guerre, the Regional Manager of the Veterans' Administration who had first discharged him[3], and the United States Civil Service Commission. Guerre was served personally, but service on the Commission was attempted by serving the United States Attorney and the Regional Director of the Tenth United States Civil Service Region, both of whom resided within the Eastern District of Louisiana. Service by registered mail was made in the District of Columbia upon the Attorney General and the United States Civil Service Commission. The District Court, after first overruling a motion to dismiss, thereafter granted defendants' motion to dismiss or for summary judgment for lack of jurisdiction. The Court of Appeals, 5 Cir., 190 F.2d 427, affirmed and certiorari was granted, 342 U.S. 884, 72 S.Ct. 176, 96 L.Ed. 663.

In holding that the Civil Service Commission is not a corporate entity which Congress has authorized to be sued, the Supreme Court pointed out [342 U.S. 512, 72 S.Ct. 412] that a suit involving the action of the Commission "generally must be brought against the individual Commissioners as members of the United States Civil Service Commission", and

that neither the individuals comprising the Commission nor the Commission as a suable entity were before the court. The court said further:

"We do not have a question of venue as to defendants until we have defendants before the court. *The only defendant before the court was Guerre. The venue as to him was all right, but it is obvious no relief can be granted against him.*"

Manifestly the agency action subjected to judicial review under the Administrative Procedure Act is not contemplated to embrace the actions of an individual administrative officer acting within the scope of his employment. Congress has established administrative remedies which must be exhausted as a prerequisite to obtaining judicial review, and it is the action of the administrative agency which falls under the scrutiny of court review—not the action of the first individual whose acts may be the foundation for an administrative review.

By an examination of the record and briefs in the Blackmar case[4] it appears that the complaint is by way of declaratory judgment seeking a judicial review of agency action. The prayer for relief specifically requests the Court to review the administrative proceedings by granting a decree:

"(a) Setting aside and annulling * * * the said action of defendant, L. F. Guerre, in his aforesaid capacity, in suspending and discharging plaintiff from his aforesaid position with the Veterans' Administration, and setting aside and annulling * * * the said action of the United States Civil Service Commission in granting the Veterans' Administration an appeal from, and in reversing, the decision of the Tenth United States Civil Service Region which found plain-

---

2. While it does not appear from the complaints in the present cases, it was stated in oral arguments that the now plaintiffs filed similar appeals to the Board of Appeals and Review.

3. The status of Guerre as defendant in

the Blackmar case corresponds to the status of Admiral McKee in the present controversy.

4. No. 361, October Term, 1951.

tiff's discharge unwarranted and recommended his reinstatement.

"(b) Declaring plaintiff's rights as respects to the aforesaid administrative proceedings, and declaring particularly that plaintiff is entitled to an order from the United States Civil Service Commission directing the defendant, L. F. Guerre, in his aforesaid capacity, to restore plaintiff to his aforesaid position with the Veterans' Administration and providing that plaintiff be restored the pay for his said position from January 2, 1947, to the date of the payment thereof, the exact amount of which to be determined in appropriate proceedings before the United States Civil Service Commission."

Under the provisions of the Veterans' Preference Act, 5 U.S.C.A. § 863, it is *mandatory* for the administrative officer "to take such corrective action as the Commission finally recommends". Where the Commission approves of the decision of the administrative officer, it would certainly carry with it an inference that the administrative officer should not act otherwise, except perhaps for good cause shown or newly discovered evidence which would justify a reversal of his former position.

The present plaintiffs endeavor to distinguish Blackmar by pointing out that the members of the Civil Service Commission have not been made parties defendant and no relief is requested as to this body or its members. They urge that neither the Civil Service Commission nor the Secretary of Navy are indispensable parties. They concede, in argument, that if this Court should declare plaintiffs' rights to have been violated, the effect of such an order would be of doubtful value. If finally restored to their positions and rank, they must receive their compensation from the United States Government acting through the Department of the Navy. In support of their theory, plaintiffs rely upon Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, wherein the court held that the Postmaster General was not an indispensable party to the proceeding as the decree to be entered would effectively grant the relief desired by expending itself on the subordinate official (local postmaster) who was before the court. But it is only where the relief against the offending officer may be granted *without risk* that the judgment awarded would "expend itself on the public treasury or domain, or interfere with the public administration" that resort may be had to relief against a subordinate official. Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209; Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411. If these cases are considered under the classification of a judicial review of final agency action, then the individual members of the Civil Service Commission are indispensable parties. If not a review of agency action, the Secretary of Navy would be an indispensable party, as the defendant, acting in his official capacity, is merely an officer exercising a power lodged in him by the Secretary. If the action is against the United States of America, the sovereignty has not granted permission to be sued in this Court, and, furthermore, has not been made a party to the action.[5] In these cases the acts of ungrading and removal from position are accomplished facts. An order, if entered, would compel defendant to take some affirmative action as contrasted with an order requiring the cessation of activities.

The cases of Fischer v. Haeberle, D.C., 80 F.Supp. 652, and Laden v. Crosson, D.C., 108 F.Supp. 240, relied upon by plaintiffs, afford but little comfort in light of Blackmar. While Laden was decided three months subsequent to the Supreme Court's decision in Blackmar, it

---

5. In Blackmar v. United States, 120 F. Supp. 408, 128 Ct.Cl. 693, as a sequel to the loss of his case on jurisdictional grounds in the United States Supreme Court, Blackmar was successful in persuading the Court of Claims that the procedural requirements of the Veterans' Preference Act had not been met.

must be assumed that the district judge was not aware of the Blackmar decision as no reference thereto is made in his opinion.

In Reeber v. Rossell, 2 Cir., 200 F.2d 334, an action was instituted by way of declaratory judgment by an honorably discharged veteran against the Regional Director of the Second United States Civil Service Region, the manager of the Brooklyn Regional Office of the Veterans' Administration, and the Personnel Officer of the Brooklyn Regional Office. In interpreting the effect of the Blackmar opinion, the court said:

> "Since the members of the United States Civil Service Commission have not been made parties to this action, the court was without jurisdiction to pass on the merits of the plaintiff's claim. Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410 [96 L.Ed. 534]. The Blackmar decision apparently was not called to the attention of the court below, and only the merits were dealt with by Judge McGohey in his opinion dismissing the complaint, 106 F. Supp. 373. But in our view the reasoning of the Supreme Court in Blackmar v. Guerre, supra, evidently required a dismissal for lack of jurisdiction."

To the same effect, see Martucci v. Mayer, 3 Cir., 210 F.2d 259, holding that a motion to dismiss for lack of indispensable parties should be granted.

There is abundant authority to the effect that a district court lacking jurisdiction by way of mandamus is likewise without jurisdiction to give a declaratory judgment determining the reinstatement rights of a former government employee for the reason that such a judgment would be futile and ineffective. Marshall v. Crotty, 1 Cir., 185 F.2d 622; Marshall v. Wyman, D.C., 132 F.Supp. 169; Branham v. Langley, supra; Kohlman v. Smith, D.C., 71 F. Supp. 73; McCarthy v. Watt, D.C., 89 F. Supp. 841; Breiner v. Kniskern, D.C., 90 F.Supp. 9. See also the able opinion of Judge Driver in Palmer v. Walsh, D.C., 78 F.Supp. 64.

The rights granted to plaintiffs under the Veterans' Preference Act provided no remedy through the courts. Such is not required. Lynch v. United States, 292 U.S. 571, 582, 54 S.Ct. 840, 78 L.Ed. 1434; United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011. Congress may limit the individual to administrative remedies. Tutun v. United States, 270 U.S. 568, 576, 46 S.Ct. 425, 70 L.Ed. 738. Manifestly Congress intended to vest the administration of the Veterans' Preference Act in the Civil Service Commission, which is empowered to issue appropriate regulations. Fitzpatrick v. Snyder, 1 Cir., 220 F.2d 522. In enacting the Administrative Procedure Act, Congress permitted judicial review of *final agency action* in courts of "competent jurisdiction". Such jurisdiction is vested only in the District Courts of the District of Columbia where the commissioners may be sued *eo nomine*. While plaintiffs contend that such a harsh construction would place individuals at a great disadvantage, this point was raised by petitioner in Blackmar where it is said in the brief:

> "If the Government's construction is placed upon this act, and the only available forum is in the District of Columbia, the vast majority of people cannot obtain redress because of the remoteness of the Court."

The United States Supreme Court undoubtedly considered this argument in Blackmar when it said as to the defendant, Guerre, "no relief could possibly be granted against him in these proceedings". Indeed, the court did not expressly decide that Commission action was reviewable by any court under the Administrative Procedure Act.

If it was the intent of Congress to permit an indirect review of agency by plaintiffs' naming the Commander of the Shipyard as a party defendant, the district courts will readily become a Pandora's box for hearing all grievances

involving preference eligible employees of federal departments. Moreover, the appeals to the Civil Service Commission will be merely a matter of form when the employee is aware of his right to a judicial review in a local district court. Clearly, Congress did not intend to grant such rights to a "preference eligible" as the term is used in the Act.

█ Counsel for Manning urge that the action is maintainable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., even though the United States is not a named party defendant. The short answer to this claim is that the Act constitutes a limited waiver of sovereign immunity and the United States has not consented to be sued in any action directly against one of its employees even though acting within the scope of his employment. American Dredging Co. v. Cochrane, 89 U.S. App.D.C. 88, 190 F.2d 106, relied upon by plaintiff, is foreign to the issue as the action was not under the Tort Claims Act.

█ Equally without merit is Manning's contention that this action is proper under the Civil Rights Act, 28 U.S.C. § 1343. As the latter Act refers to 42 U.S.C. § 1985, and as 42 U.S.C. § 1986 is predicated upon the violation of the Civil Rights specified in § 1985, it is necessary to interpret these sections together. In Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581, involving an action against the Attorney General, the Director of the Enemy Alien Control Unit of the Department of Justice, and the District Director of Immigration, to recover damages for false arrest when plaintiff was kept in wrongful custody for more than four years under an alleged conspiracy to deprive him of his rights, Judge Learned Hand, in commenting on the Civil Rights Act, said:

"Very little need be added about the second count which was laid under the Civil Rights Act. Section 43 is so plainly limited to acts done under color of some state or territorial law or ordinance that no discussion can make it clearer than appears from its reading. It is equally plain that neither the first, nor second, subdivisions of § 47 (now 42 U.S. C.A. § 1985) cover the situation at bar; they concern attempts to deprive persons of public office, or of access to courts or other tribunals, where they may wish to assert their rights. The first clause of the third subdivision of § 47 does declare that, if two or more persons conspire to deprive 'any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws', the injured party may recover damages. The plaintiff's argument appears to be that this language creates a claim against any two persons who conspire to injure another for spite or other improper motives, apparently because to single out anyone for illegal aggression is to deny him equal protection of the laws. Quite aside from the fact that in order so to construe the words they must be broken from a context which shows their more limited meaning, it is apparent that they could not have had such a scope without destroying their validity constitutionally."

█ The Fourth Circuit has followed the same reasoning in Papagianakis v. The Samos, 4 Cir., 186 F.2d 257, certiorari denied 341 U.S. 921, 71 S.Ct. 741, 95 L.Ed. 1354. In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 775, 90 L.Ed. 939, the court did permit a district court to take jurisdiction in an action for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments, under the theory that such action *may* have been one that "arises under the Constitution or laws of the United States". That, however, is not Manning's theory upon which he bases jurisdiction. Holding that the Civil Rights Act has no application to the factual allegations of the complaint, there affords no reason to take jurisdiction. This is not to say that a government officer is necessarily immunized

from liability, if his action is such that a liability would be imposed by the general law of torts. If his actions do not conflict with the terms of his valid statutory authority, they are then the actions of the sovereign if they would be regarded as the actions of a private principal under the normal rules of agency, and this is so whether or not such actions are tortious under general law. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 695, 69 S.Ct. 1457, 93 L.Ed. 1628.

For the reasons hereinabove stated it is the opinion of this Court that it has no jurisdiction to entertain the actions in which these plaintiffs seek relief and the respective motions to dismiss must be granted without prejudice to either of said plaintiffs to proceed in a court of competent jurisdiction. Counsel for the defendant will prepare separate orders of dismissal.