Paul F. HILLERY, Leon E. French, Jr., Oliver E. Dube, Edward Sheehy, Fred M. Ball, and 64 others, Plaintiffs,

v.

Robert L. MOORE, Jr., Captain, U. S. Navy, Commander, Portsmouth Naval Shipyard, Kittery, Maine, Defendant.

Civ. No. 5-63.

United States District Court
D. Maine, S. D.

Aug. 30, 1957.

James H. Dineen, Kittery, Me., Robert A. Shaines, Portsmouth, N. H., for plaintiffs.

Peter Mills, U. S. Atty., Portland, Me., for defendant.

WOODBURY, Circuit Judge (sitting by designation).

This is a complaint by 69 civil service status, or career, employees at the United State Naval Shipyard located in Kittery, Maine, generally known as the Portsmouth Naval Shipyard, against the Naval Officer in command of the Yard. Although it is not alleged in the complaint that all of the plaintiffs are preference employees (veterans) with efficiency ratings of "good" or better, federal jurisdiction is asserted to rest upon the Veterans' Preference Act, so-called, of June 27,

1944, as amended, 5 U.S.C.A. § 851 et seq., and an amount in controversy, individually and collectively, in excess of $3,000, exclusive of interest and costs. Title 28 U.S.C. § 1331. It is stated in the complaint that this is a "Suit for a preliminary injunction to prevent the defendant's circumventing and violating the Veterans' Preference Act of 1944 and Civil Service Regulations by arbitrarily making rules relative to transfers of employees of the Electrical Fittings Inventory Control Division to another station designated by the defendant."

It appears from the complaint and its attached exhibits that on August 6, 1957, the defendant issued an Information Bulletin, No. 40–57, wherein he stated that on July 3, 1957, the Secretary of the Navy by Alstacon 14 had directed that as an economy measure the Electric Fittings Inventory Control Division (E.F.I.C.D.) at the Yard be disestablished during the period between July 1 and December 31, 1957, and its functions consolidated with similar functions currently being performed at the Ships Parts Control Center, Mechanicsburg, Pennsylvania, and the Electronics Supply Office, Great Lakes, Illinois. The Bulletin then went on to explain the right of employees affected thereby to transfer with the function, and to continue in employment at the transferee or receiving station provided they qualified under that station's consolidated employment register, or, in the alternative, their right to decline transfer, in which event they would be separated on 30-day notice due to reduction in force at the Yard, but given priority certificates entitling them to reemployment at the Yard to fill vacancies for which they were qualified as such vacancies occurred.

Three days later, on August 9, the Industrial Relations Officer at the Yard issued a placement questionnaire, so-called, to personnel affected by the impending transfer of function of the E.F.I.C.D. wherein the substance of Bulletin 40–57 was restated and the employees affected asked to indicate not later than August 15, whether they wished to apply for transfer with the function, or were unwilling or unable to do so but wished to be considered for placement in vacancies that might occur at the Yard in their grade or higher with the understanding that, if not placed, separation for inability to accompany the transferred function would follow. On August 14, the defendant further advised the plaintiffs of their rights and extended the time for them to reply to the questionnaire to August 22, 1957.[1] Then, on August 15, the defendant issued another Information Bulletin, No. 42–57, on the subject of restrictions on filling vacancies as follows:

"1. I regret to announce that as a result of restrictions recently imposed by the Department of Defense on hiring personnel it is impossible to fill any current vacancies except where replacement is imperative for essential operation. This policy is applicable throughout the Shipyard.

"2. The Shipyard will take all possible action to assist those employees separated by reduction in force and those employees in the Electrical Fittings Inventory Control Division who cannot transfer to Mechanicsburg to obtain employment elsewhere."

In substance the complaint alleges that the transfer of the functions of the E.F.I.C.D. is not what it purports on its face to be, but is an undercover, if not underhanded, way to accomplish a reduction in force at the Yard. Indeed, it was suggested by counsel for the plaintiffs at the hearing on the motion for a preliminary restraining order that the Secretary's order of transfer of function was issued in bad faith in order to circumvent the statutes and Civil Service Regulations governing reduction in force. Thus it is alleged that the questionnaire is patently and directly contrary to law in that it required those unwilling or unable to transfer with the E.F.I.C.D. function

---

1. At the hearing before me in Portland on that date the defendant agreed to a further postponement to August 30, 1957.

to elect separation as the alternative to transfer instead of permitting them to remain in employment at the Yard subject to being dropped due to reduction in force in accordance with applicable statutes and regulations.

The relief requested is an order enjoining the defendant from forcing the plaintiffs to make the election required by the letter and questionnaire of August 9, *supra*, for it is said that such election, in that it calls for consent to separation by employees unable or unwilling to transfer, deprives them of their statutory right to "compete with other employees of the Naval Shipyard as to Retention Point Credits and competitive rights for retention and continued employment."

At the hearing in Portland on August 22 on the plaintiffs' application for a temporary restraining order to which reference is made above, I declined to issue such an order on the defendant's assurance of a further postponement to August 30 of reply to the questionnaire of August 9. And I expressed to counsel grave doubts as to this court's jurisdiction in view of the decision in this circuit of Fitzpatrick v. Snyder, 1 Cir., 1955, 220 F.2d 522. Counsel for the defendant attended the hearing and moved in writing to dismiss for lack of jurisdiction. I reserved decision requesting briefs from both sides on the jurisdictional issue. Briefs have been filed and I now conclude that this court is without jurisdiction.

■ The complaint as I read it puts in issue the validity of the order of the Secretary of the Navy transferring the function of the E.F.I.C.D. Indeed, the plaintiffs' complaint basically rests upon the proposition that that order, although effective, is but a sham or subterfuge to mask an order directing a reduction in force at the Portsmouth Naval Shipyard, and therefore is illegal and invalid as a mere device to circumvent the statutes and regulations governing the separation of employees due to a reduction in force. This direct and clear challenge to the validity of the act of the Secretary in my opinion makes him an indispensable party. Without him the local Shipyard com-

mander cannot retain the function. It will go unless the Secretary is enjoined. An order directing retention of the function at the Portsmouth Naval Shipyard cannot expend itself on the defendant, but can only expend itself on the Secretary and thus, as I see it, this court is without jurisdiction under the rule of Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95.

■ Moreover, this case impresses me as one in which the plaintiffs must exhaust the administrative remedies accorded them by § 14 of the Veterans' Preference Act of 1944, as amended, 5 U.S.C.A. § 683, and 5 U.S.C.A. § 652, before they have recourse to the courts. The only action of the defendant or his subordinates of which the plaintiffs complain is the issuance of the questionnaire of August 9, which, they assert, requires them, if unable or unwilling to transfer with the E.F.I.C.D. function, to waive their right to remain in employment at the Yard instead of continuing in employment there subject to possible separation due to reduction in force. It does not seem to me that issuance of a questionnaire designed, so far as I can see, only to ascertain the plaintiffs' wishes as to transfer, constitutes a patent and obvious violation by the defendant of any clearly defined duty imposed upon him by statute so as to bring this case within the exception to the rule of exhaustion of administrative remedies recognized in Wettre v. Hague, 1 Cir., 1948, 168 F.2d 825 and cases cited. This case seems to me clearly ruled by Fitzpatrick v. Snyder, 1 Cir., 1955, 220 F.2d 522 and cases cited.

Other grounds may well exist for the same conclusion, such as perhaps the prematurity of the suit or else that it is one against the United States for which it has not given its consent. See Chief Judge Magruder's concurring opinion in the Fitzpatrick case, supra. I find no present occasion, however, to discuss those grounds.

In accordance with the foregoing opinion it is: Ordered, adjudged, and decreed that the instant complaint and action be, and the same hereby are, dismissed for lack of jurisdiction.