Joseph H. MAUPIN, Plaintiff

v.

Carl FRY, Edward Jones, and Crosby Wright, individually and as constituting the Tennessee Agricultural Stabilization and Conservation Committee, Defendants.

Civ. No. 3064.

United States District Court
Middle District Tennessee,
Nashville Division.

June 9, 1961.

Dale M. Quillen and Philip M. Carden, Nashville, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., for defendants.

William E. Miller, Chief Judge.

This is an action instituted by the plaintiff, Joseph H. Maupin, against the defendants, Carl Fry, Edward Jones and Crosby Wright, individually and as constituting the Tennessee Agricultural Stabilization and Conservation Committee, for a declaratory judgment that the plaintiff has not been legally removed from his office as State Administrative Officer, Agricultural Stabilization Office, that he is still entitled to the rights and privileges thereof, and for a temporary injunction restraining the defendants from further usurping the plaintiff's office, or from interfering with the discharge of his duties. Jurisdiction is invoked under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201–2202, the Administrative Procedure Act, 5 U.S.C.A. § 1009, and under the general statute conferring jurisdiction in cases involving federal questions where the amount in controversy exceeds the sum or value of $10,000, it being alleged that the position in question carries an annual salary of $11,415.

The action is presently before the Court upon the plaintiff's motion for a temporary injunction and upon the defendants' motion to dismiss the action upon the grounds:

(1) That the complaint fails to state a claim upon which relief can be granted;

(2) That plaintiff has failed to exhaust his administrative remedies before the Civil Service Commission;

(3) That the Secretary of Agriculture or the Under-Secretary is an indispensable party to the action;

(4) That the Court lacks authority to grant the affirmative relief sought in the complaint which would be tantamount to a mandamus;

(5) That the Court lacks authority to review the controversy under the Administrative Procedure Act or the Declaratory Judgments Act; and

(6) That the plaintiff can show no irreparable damage and has an adequate remedy at law.

Briefly summarized, the plaintiff's claim for relief in the second amended complaint may be stated as follows:

Plaintiff is a war veteran entitled to the benefits of the Veterans' Preference Act, 5 U.S.C.A. §§ 851–869, particularly Sec. 863, which prohibits his discharge except for cause after specified notice of the charges against him. He has seventeen years and nine months accumulated service for retirement purposes under the laws applicable to the classified civil service. He was appointed to the office of State Administrative Officer, Tennessee Agricultural Stabilization Office in 1954 by the Tennessee State Agricultural Stabilization and Conservation Committee, and his appointment was approved through proper channels of the Commodity Stabilization Service of the Department of Agriculture effective September 21, 1954. His appointment, al-

though originally indefinite, was made permanent effective September 21, 1957. Plaintiff has been classified as GS–13 in the Civil Service, the position carrying an annual salary of $11,415. On February 15, 1961, less than one month after the inauguration of a new administration in Washington, plaintiff was advised by an assistant to the deputy administrator of production adjustment, that he had been instructed to request the plaintiff's resignation. This was declined by the plaintiff on February 16, 1961. Thereafter, the Chairman of the ASC State Committee was advised that plaintiff's authorization to incur travel expenses had been terminated effective February 17, 1961. The three incumbent members of the committee having resigned on February 20, 1961, the defendants were appointed in their places as members of the Tennessee ASC State Committee and assumed their new duties on February 27, 1961, the defendant Fry being chairman. On the same date that the defendants assumed their duties, they called plaintiff into a conference room and informed him that the defendant Fry would assume the full time duties of plaintiff's office effective the following day, February 28, a decision which was carried out. The plaintiff was literally ousted from his desk and office by the defendant Fry, who himself usurped the duties and privileges of the office and occupied plaintiff's desk from and after February 28, 1961. The defendant Fry instructed the secretary to the state administrative officer and the committee to have all secretaries in the office prepare all letters for the defendant Fry's signature. Accordingly, from and after February 28 the plaintiff has been prevented from performing any duties of his office, except for signing a few letters and a few other matters of a routine nature during the first few days of the new regime. The plaintiff nevertheless reported to the office daily, and was ready, willing and able to perform the duties of the office if permitted to do so.

On March 24, 1961, more than a month after plaintiff's travel privileges had been cut off and nearly a month after his physical ouster, the plaintiff received a letter from the new Secretary of Agriculture, the Honorable Orville L. Freeman, purporting to give him a 30-day notice of dismissal for cause as required under the Veterans' Preference Act of 1944. Although the plaintiff was never informed either before or after the receipt of this letter how or on what basis the committee made its "finding that the required relationship as outlined" did not exist, it is alleged by the plaintiff that the committee had and still has no facts upon which to base such a finding. Since the defendants did not allow any relationship between plaintiff and the new committee to come into existence in the first instance, it is the plaintiff's insistance that the inescapable conclusion is that he was removed because he was not allied with the defendants' political party, and not for such cause as would promote the efficiency of the service as required by the Veterans' Preference Act.

On April 28, 1961, the defendant Fry presented plaintiff with a letter from the Under-Secretary of Agriculture purporting to be a notice of the termination of the plaintiff's services effective at the close of business that day, the letter being accompanied by a standard personnel notice form dated April 26, 1961, notifying plaintiff of his "removal" effective April 28, and assigning as the reason therefor that "it has been decided that you do not meet the requisites of the new Tennessee ASC State Committee in the position of State Administrative Officer." The notice was signed by a perforation stamp of John P. Haughey, Personnel Officer, Personnel Management Division, Commodity Stabilization Service. Since April 28, 1961, the defendants have not only barred the plaintiff from any performance of the duties of the office whatever and from keeping up with the literature pertinent thereto, but also have caused the fiscal officers of the Agriculture Department to terminate his salary

and other financial benefits. The plaintiff alleges that his ouster and removal constitute a bald attempt by the defendants to convert a civil service position into a political plum, to be awarded or withdrawn at the pleasure of whatever persons may occupy the political seats in Washington, all in violation of the letter, spirit and basic intent of the civil service system and the special preferences given to war veterans thereunder.

It is further alleged that the plaintiff was not given notice as required by Sec. 14 of the Veterans' Preference Act setting forth "any and all reasons, specifically and in detail" for his proposed discharge, and that the letters received by him from the Secretary and Under-Secretary of Agriculture failed to show that the attempted discharge was "for such cause as will promote the efficiency of the service" as required by the statute. The plaintiff has filed a timely appeal to the Civil Service Commission in order to protect his administrative procedural rights but this remedy is alleged to be inadequate to protect the plaintiff from irreparable damage in being ousted and barred from the privileges, prestige, and rewards of his office.[1]

■ Without discussing other grounds of the defendants' motion, it appears that the plaintiff's action must be dismissed for the reason that indispensable parties are not before the Court. In this connection it appears that general authority to appoint personnel is vested in the Secretary of Agriculture under 5 U.S.C.A. §§ 43 and 527, and in accordance with Reorganization Plan No. 2 of 1953 (18 F.R. 3219, 67 Stat. 633, 5 U.S.C.A. § 133z–15 note). The Secretary, under 5 U.S.C.A. § 514d, as well as under Section 4 of the Reorganization Plan No. 2, is authorized to delegate to officers in the Department of Agriculture authority to employ personnel. This authority by 8 Administrative Regulations 318a is delegated by the Secretary to the Director of Personnel, presently Mr. John P. Haughey, and he is authorized to redelegate this authority to qualified individuals at his discretion. While the Director, as shown by 8 AR 315b, has delegated to heads of department agencies employment authority, it appears that such authority may be revoked by the Director of Personnel at any time, 318(b) (2), and that by internal order the Administrative Officer of CSS has redelegated to the Director, Personnel Management Division, occupied by the said John P. Haughey, authority to appoint various positions within CSS, including State Administrative Officers. General authority to dismiss state administrative officers is vested in the Secretary as a concomitant of the Secretary's power of appointment, and pursuant to Reorganization Plan No. 2 there appears to have been a general delegation of authority from the Secretary to the Under-Secretary and Assistant Secretaries of Agriculture to perform all duties and exercise all functions vested in the Secretary. It is specifically provided by the Administrative Regulations of the Department of Agriculture, 8 AR, Sec. 2231(a), page 743, that the decision to remove an employee will be signed by the Secretary, the Under-Secretary, the appropriate Assistant Secretary, the Director of Agricultural Credit Services, or the Director of Personnel. The plaintiff's removal as administrative officer in the instant case was accomplished in compliance with this regulation, as it appears from the exhibits that such notice of plaintiff's removal was signed by the Secretary in his letter of March 21, 1961, by the Under-Secretary in his letter of April 26, 1961, and

1. While no order has been entered allowing the filing of the second amended complaint, for the purposes of this memorandum and a decision of the case the plaintiff's claim will be accepted by the Court as alleged in the second amended complaint, and the defendants' motion to dismiss will be treated as directed thereto. The order to be entered pursuant to this memorandum will formally allow the filing of the second amended complaint and will provide that the defendants' motion to dismiss is directed to such second amended complaint.

by the Director of Personnel in the Personnel action form of April 26, 1961.[2]

It is true that in bringing about the plaintiff's removal, the Secretary and his delegates would be required to comply with the provisions of the Veterans' Preference Act, but a proper determination as to whether the requirements of such act were complied with cannot be made without having jurisdiction of the officers who attempted the removal and in whom the basic power to remove the state administrative officer is vested.

In Payne v. McKee, D.C.E.D.Va.1957, 153 F.Supp. 932, plaintiff sought a declaratory judgment that a reduction in rank by the commander of the Naval Shipyard would violate his rights secured by the Veterans' Preference Act, but the Court held among other grounds that the complaint should be dismissed for the reason that the Secretary of the Navy or members of the Civil Service Commission would be indispensable parties. On substantially the same facts the Secretary of the Navy was held to be an indispensable party in Hillery v. Moore, D.C.S.D. Maine 1957, 154 F.Supp. 600. And the Veterans' Administration as the employing agency authorized to separate the plaintiff from employment was held to be an indispensable party in Henry v. Newman, D.C.E.D.Pa.1953, 110 F.Supp. 955, an action against the Personnel Officer of the Regional Office of the Veterans' Administration seeking cancellation of an order separating plaintiff from service. Schwartz v. Mathias, 3 Cir., 1956, 235 F.2d 620, was an action by a postal clerk against the Regional Director of the Civil Service Commission and the members of a Security Hearing Board following a suspension from duty pending a security investigation. The plaintiff sought his reinstatement alleging that the hearing was improperly conducted and deprived plaintiff of due process of law. In dismissing the plaintiff's action upon the ground that the Postmaster General was an indispensable party, the Court used the following language which appears to be apposite in this case:

"Schwartz argues that the Postmaster General was not an indispensable party because it was the Security Hearing Board which deprived him of due process. We have read the cases cited in his brief, and cannot agree. Where suit has been permitted against a local or regional official alone it has been because an order directed to him will be effective to obtain the result desired. While the hearing itself in the case at bar may have constituted a deprivation of due process, the real injury to Schwartz was his discharge. An order directed to the Security Hearing Board would be ineffectual to effect Schwartz's reinstatement since it was the Postmaster General, and not the Hearing Board, who dismissed Schwartz and only the Postmaster General can reinstate him."

A review of the many cases on the question discloses considerable confusion and uncertainty as to the necessity, in an action against a governmental official, of joining his superior officer. Numerous tests have been suggested by both courts and text writers to reconcile the various holdings and to formulate a workable and equitable rule. The

2. At the hearing upon the order to show cause why an injunction should not issue, the Court requested supplemental briefs from the respective parties as to the legal authority to appoint the ASC State Committee and the State ASC Administrative Officer, and as to the legal authority to discharge the State Administrative Officer. Such briefs were filed and the defendants' brief is accompanied by 14 exhibits consisting of pertinent letters, forms, regulations, etc. Many of the same letters, forms and regulations are discussed by the plaintiff in his supplemental brief. All of these exhibits have been considered by the Court in disposing of the questions before the Court for decision, as well as the exhibits attached to the original complaint and adopted by reference in the second amended complaint. Consequently, the order to be entered pursuant to this memorandum should provide that all exhibits attached to defendants' supplemental brief constitute and are treated as a part of their motion to dismiss.

subject is thoroughly discussed and many of the pertinent authorities are analyzed in 3 Moore, Federal Practice, Sec. 19.16. But for the purposes of the present case it would appear that the decision is governed by the distinction approved by the Supreme Court in its opinion in Williams v. Fanning, 332 U.S. 490, 494, 68 S.Ct. 188, 189, 92 L.Ed. 95, that suit will be permitted against the subordinate official alone, without joining his superior, if the decree entered against the subordinate will "effectively grant the relief desired by expending itself on the subordinate official who is before the court." On the other hand, if the decree in order to be effective must require the superior to take new action either directly or indirectly through his subordinate, then the superior officer is an indispensable party.

Applying this test in the present situation, it seems clear that indispensable parties are lacking, for any judgment entered by this Court in accordance with the prayer of the complaint would not effectively grant the relief desired by expending itself on the subordinate officials. A declaratory judgment that the plaintiff was illegally removed, and that he is still entitled to the full rights and privileges of the office, followed by an injunction authorizing the plaintiff to exercise the duties of the office, if directed to defendants alone, would be ineffective to vest the plaintiff with the very result he seeks, i. e., the enjoyment of the full rights and privileges of the office. The judgment to be efficacious must require superior officers to take new action either directly or indirectly through subordinates. It is true that the plaintiff argues that he seeks only the negative and limited relief of enjoining local officials from trespassing upon his rights and that this limited type of relief can be effectively accomplished by expending itself upon the local officials who are before the Court in the action. The difficulty with the plaintiff's position, however, is that it overlooks the fact that the complaint seeks a declaration by the Court that the plaintiff "has not been legally removed from his office and that he is still entitled to the full rights and privileges thereof." Relief of this nature obviously cannot be effectual by expending itself upon the local members of the ASC State Committee who have no authority to reinstate the plaintiff and who had no authority to remove him.

In essence and effect the real and vital injury to the plaintiff as alleged in the second amended complaint was his discharge, an act which was performed and could legally have been performed only by superior officers. Although the complaint seeks relief under the Declaratory Judgments Act, consisting of a declaration by the Court that the plaintiff is still entitled to the full rights and privileges of the office, for all practical purposes the ultimate aim of the complaint is to accomplish the plaintiff's reinstatement. This is made clear when it is considered that the Declaratory Judgments Act, 28 U.S.C.A. § 2202, provides that after adjudicating the rights of the parties the Court is authorized after reasonable notice and hearing to grant "further necessary or proper relief" based upon such declaration "against any adverse party whose rights have been determined by such judgment." In the instant case, if the Court should declare the plaintiff entitled to the full privileges of the office, it would be powerless to effectuate the judgment by actually restoring the plaintiff to the exercise of such rights and privileges by injunctive process, except perhaps to the limited extent of restoring him to the physical possession of his office desk and other tangible items of equipment. Without having jurisdiction of the superior officers against whom an effectual judgment could be rendered, the Court's declaration of rights would be futile and unavailing. Mere physical possession of the office desk and equipment without the other rights, powers and privileges incident to the office, including the right to receive compensation for services rendered, would be little more than an idle ceremony, and manifestly would fall far short of the full and complete relief which the plaintiff under-

takes to obtain and to which he is entitled, if his rights under the Veterans' Preference Act have been violated.

Upon the facts in this case and in accordance with the auhorities cited, the Court is compelled to the conclusion that the Secretary of Agriculture or his delegates are indispensable parties, and since jurisdiction over such parties by this Court does not exist and cannot be obtained, the plaintiff's action must be dismissed, without prejudice to his rights administratively or in a court of proper jurisdiction.

An appropriate form of order will be presented to the Court in compliance with this memorandum, including the directions contained in Footnotes 1 and 2.